# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Hon. John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 2027 | **DATE** | April 8, 2002 |
| **CASE TITLE** | PAUL DAVIS SYSTEMS OF NORTHERN ILL. Vs. PAUL W. DAVIS SYSTEMS, INC. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10)■ [Other docket entry] Plaintiff's renewed motion to lift the stay on litigation [49-1] is denied. The defendant's motion for sanctions [63-1] is granted in part and denied in part. The parties are ordered to proceed with arbitration of all claims, including the plaintiff's new claims. ENTER MEMORANDUM OPINION.

(11) ■ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | | **Document Number** |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| X | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | APR 17 2002 | | |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | | | 14 |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

C:\MINUTE-davis2 minop

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNIVERSAL RESTORATION SERVICES,    )
INC. (f/k/a PAUL DAVIS SYSTEMS OF  )
NORTHERN ILLINOIS), an Illinois    )
corporation,                       )
                                   )
            Plaintiff,             )
                                   )
    v.                             )    No. 98-C-2027
                                   )
PAUL W. DAVIS SYSTEMS, INC., a
Florida corporation,

            Defendant,

**DOCKETED**
**APR 17 2002**

## MEMORANDUM OPINION

Before the court is the plaintiff's renewed motion to lift the stay of these proceedings pending arbitration, and the defendant's motion for sanctions. For the reasons explained below, the motion to lift the stay is denied, and the motion for sanctions is granted in part and denied in part.

## BACKGROUND

The plaintiff, Universal Restoration Services, Inc., was formerly known as Paul Davis Systems of Northern Illinois, Inc. ("PDSNI" or "Universal") and was a franchisee of the defendant Paul W. Davis Systems, Inc. ("PWDS" or "franchisor"). The underlying dispute between the parties was described in our earlier memorandum opinion as follows:

14

The parties entered into a detailed franchise agreement
("Franchise Agreement") to operate PDSNI, a general
contracting and cleaning business that caters primarily
to insurance restoration markets.  The Franchise
Agreement specifically incorporated two earlier
agreements concerning, respectively, the purchase of
the franchise territory and the granting of franchise
rights.[1]  PDSNI filed this action for damages and for
declaratory judgment, alleging that PWDS breached the
franchise agreements.[2]

PWDS argues that the claims asserted by PDSNI are
subject to an arbitration clause under the Franchise
Agreement, which states that "[a]ny controversy or
claim arising out of or relating to this contract or
the breach thereof, shall be settled by arbitration in
accordance with the arbitration procedures as set forth
in Booklet Eight of the Operations Manual."  Complaint,
Ex. A, at 23.  Therefore, contends PWDS, the Federal
Arbitration Act ("FAA") compels this court to stay the
proceedings pending arbitration.

Paul Davis Systems of Northern Illinois v. Paul W. Davis Systems,

Inc., No. 98 C 2027, 1998 WL 749041, at *1 (N.D. Ill. October 15,

1998). In October of 1998, we granted the defendant's motion to

stay the proceedings and compel arbitration.

Two years later, in December of 2000, the plaintiff filed a

---

[1] The parties, along with PDSNI's president and sole owner, Phil
Goldstein, had executed a Triparty Agreement for the purchase of an existing
PWDS franchise territory.  Reply to Plaintiff's Response to Motion to Compel
Arbitration and to Stay Court Proceedings ("Reply") at 2.  The parties and
Goldstein had then executed a Franchise Transfer Agreement in which PWDS
granted Goldstein franchise rights.  Id.  We will refer to these agreements
along with the Franchise Agreement collectively as "franchise agreements"
where appropriate.

[2] Count I alleges breach by bad faith denial of franchise sale.  Count
II alleges interference with business expectancy.  Count III seeks declaratory
judgment that PWDS breached the contract and that PDSNI is entitled to
terminate the contract.  Count IV alleges breach of the implied covenant of
good faith and fair dealing.  Count V is based on the Illinois Consumer Fraud
and Deceptive Business Practices Act.  Count VI seeks declaratory judgment
that the non-compete provisions of the franchise agreements are unenforceable.

motion to lift the stay on this litigation on the ground that the defendant waived its right to arbitrate. The motion was briefed and oral arguments were held before the court. On May 8, 2001, we denied the motion.

Five months later, in October of 2001, the plaintiff filed an Amended Statement of Claims in the arbitration proceedings. The plaintiff's new claims for violations of the Illinois Franchise Disclosure Act (IFDA), Illinois Consumer Fraud Act, and RICO, are brought against a host of new individuals, including officers and directors of PWDS and its affiliates, and the Arbitration Coordinator. In sum, the plaintiff alleges a RICO scheme to sell PWDS franchises under false pretenses and to prevent detection of the scheme by requiring arbitration. In addition, the plaintiff alleges that the arbitration process is used to enforce illegal provisions of the franchise agreement. Plaintiff's Memorandum in Support of its Motion, at 4-5 ("Pl.'s Memo."). The plaintiff states that these allegations are primarily based on "developments since last May." Id. at 1.

Also in October, the plaintiff renewed its motion in this court to lift the stay on this litigation. The plaintiff argues that the stay should be lifted for two reasons: (1) the new statutory claims it is asserting are not subject to arbitration; and (2) the arbitration process does not provide adequate procedural safeguards to allow the plaintiff to "effectively

vindicate" its statutory claims.

The defendant argues that the plaintiff's new statutory claims are within the scope of the arbitration agreement, and even if they are not, the original claims must still be arbitrated. In addition, the new claims were raised only in the arbitration, so they are not before this court and we would have no jurisdiction to hear them. Finally, the defendant argues that the plaintiff's claims about the unfairness of the arbitration process are simply repetitions of earlier arguments that this court has already rejected. The defendant moved for sanctions against the plaintiff for vexatiously and unreasonably multiplying the proceedings. See 28 U.S.C. § 1927.

**ANALYSIS**

**I.     PLAINTIFF'S MOTION TO LIFT THE STAY ON LITIGATION**

Whether or not the new claims are arbitrable, there is no doubt that the original claims must be arbitrated. The plaintiff only weakly suggests otherwise, arguing that it makes no sense to engage in parallel proceedings by litigating the new claims in federal court while the original claims are arbitrated. We reject this argument. Parties are required to arbitrate claims they agreed to arbitrate even if the result is "piecemeal" litigation. Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985).

Thus, the only issue is whether we should lift the stay on

litigation to allow the plaintiff to litigate its new statutory claims in federal court. The defendant argues that this court lacks jurisdiction over the new claims because there is no complaint on file with this court that includes those claims. The new claims have been raised only in the arbitration proceedings; the additional parties have been named as respondents only in the arbitration proceedings. We are dubious that we have jurisdiction over claims brought only in the arbitral forum; we certainly have no jurisdiction over individuals who are not parties to this case.

The plaintiff does not address this fundamental point in its Reply brief. It does not even request leave to file a proposed amended complaint. Instead, the plaintiff briefly describes the new claims it has raised in the arbitration, argues that these claims are not arbitrable under the franchise agreement, and contends that the arbitration proceedings are not adequate to fairly adjudicate its claims. To avoid a further delay in arbitration should the plaintiff move to amend its complaint in the future, we will explain why the plaintiff's arguments are meritless.

**A.    Arbitrability of Statutory Claims**

The plaintiff argues that in 1989, when the franchise agreement was signed,

courts only allowed the arbitration of statutory claims
like those Universal now asserts only [sic] when the
agreements to arbitrate at issue could fairly be
construed to reflect a voluntary and knowing waiver by
a party of its right to a formal federal court
adjudication of such statutory claims.

Pl.'s Memo., at 6. The plaintiff further argues that the terms of
the arbitration agreement did not put it on notice that it was
waiving its right to litigate in federal court the statutory
claims it now raises.

We disagree. The plaintiff supports the above-quoted
proposition with a citation to <u>Shearson/ American Express, Inc.
v. McMahon</u>, 482 U.S. 220, 229 (1987).[3] The citation to this case
is curious, as it lends a great deal of support to the
defendant's position, and undercuts the plaintiff's position. The
plaintiffs in that case were customers of Shearson/American

---

[3] The plaintiff also cites two Seventh Circuit cases, neither of which
supports its argument. The first, <u>Gibson v. Neighborhood Health Clinics, Inc.</u>,
specifically distinguished between waivers of statutory rights and agreements
to arbitrate statutory rights. 121 F.3d 1126, 1129 (7th Cir. 1997). The <u>Gibson</u>
court noted that statutory claims can only be relinquished by a "knowing and
voluntary waiver"; however, it is not clear that agreements to arbitrate
require the "added protection" of a knowing and voluntary waiver to proceed in
federal court. <u>Id.</u> ("in agreeing to arbitrate a federal claim, 'a party does
not forgo the substantive rights afforded by the statute; it only submits to
their resolution in an arbitral, rather than a judicial, forum'). The court
did not decide the issue, holding instead that arbitration would not be
compelled under Indiana law where the plaintiff received no consideration for
promising to arbitrate her claims. The other case plaintiff cites, <u>Pierce v.
Atchinson, Topeka & Santa Fe Ry. Co.</u>, 65 F.3d 562, 571 (7th Cir. 1995), does
not even mention arbitration. The court considered whether the plaintiff's
release of his employment discrimination claims in exchange for a severance
package was a knowing and voluntary waiver.
    In fact, the Seventh Circuit has not as yet adopted a "knowing and
voluntary waiver" standard for evaluating the enforceability of arbitration
agreements, even in the employment context. <u>See Penn v. Ryan's Family Steak
Houses, Inc.</u>, 269 F.3d 753, 761 (7th Cir. 2001) (questioning the validity of
such an approach). The plaintiff is aware of this case law, as it cited <u>Penn</u>
in another section of its brief. The plaintiff does not explain why this court
should grant "added protection" to arbitration agreements made in the context
of a franchisee/franchisor relationship.

Express who had signed customer agreements providing that "any controversy arising out of or relating to my accounts, to transactions with you for me or to this agreement or the breach thereof, shall be settled by arbitration ...." Id. at 223. The customers alleged RICO, fraud, and other claims, arguing that they should not be required to submit these claims to arbitration. The court disagreed, expressly stating that the "duty to enforce arbitration agreements is not diminished when a party bound by an agreement raises a claim founded upon statutory rights." Id. at 226. It further held that "there is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act." Id. at 238. Therefore, at the time the parties in the instant entered into the arbitration agreement, the law was very clear that statutory claims could be subject to arbitration, and even more specifically, that statutory claims such as those the plaintiff raises, RICO and IFDA, could be vindicated in an arbitral forum. Id.; see also Davis v. Rentrak Corp., Nos. 88 C 9614, 88 C 9615, 1989 WL 2047 at *3, 5 (N.D. Ill. Jan. 6, 1989) (holding that IFDA claims were arbitrable where plaintiffs signed franchise agreements mandating arbitration of "any controversy or dispute in relation to [the franchise agreement], its interpretation, or performance or breach thereof by the parties").

**B.   Scope of the Arbitration Agreement**

The next question is whether the plaintiff's new claims fall within the scope of the claims the parties agreed to arbitrate. In considering this question, we bear in mind the Supreme Court's admonition that "any doubt concerning the scope of arbitrable issues should be resolved in favor of arbitration." See Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd., 1 F.3d 639, 642 (7th Cir. 1993) (quoting Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1985)).

The arbitration agreement here is found in section 23.1 of the parties' Franchise Agreement, and provides as follows:

> Any controversy or claim arising out of or relating to this [Franchise Agreement] or the breach thereof, shall be settled by arbitration in accordance with the arbitration procedures set forth in Booklet Eight of the [franchisor's] Operations Manual.

According to the Seventh Circuit, the phrase "arising out of" is very broad, and "reaches all disputes having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se." Sweet Dreams, 1 F.3d at 642.

> In fact, any dispute between contracting parties that is in any way connected with their contract could be said to "arise out of" their agreement and thus be subject to arbitration under a provision employing this language.

Id. (holding that arbitration was required on plaintiff's IFDA

claim). The plaintiff's new claims are that the defendant made
false representations in violation of the IFDA in order to sell
new franchises and that the arbitration provision is used to
prevent detection of this scheme. In addition, the plaintiff
claims that arbitration protects the illegal provisions of the
franchise agreement. The plaintiff makes clear that its new
claims are tied to the arbitration specifically, as they are
"premised in large part on developments since last May," when
this court ordered for the second time that arbitration proceed.
See Pl.'s Memo. at 1. Therefore, no matter how the plaintiff
dresses its new allegations, they are either an attack on the
legality of the franchise agreement itself, including the
arbitration clause, or more specifically, on the arbitration
process that is described in Booklet Eight of the Operations
Manual. These claims clearly "arise out of" the franchise
agreement.

In reply, the plaintiff argues that unlike the arbitration
clause in Sweet Dreams, the language of the arbitration agreement
here is qualified by further language in section 13.2 of Booklet
Eight. This argument is specious. The arbitration clause in Sweet
Dreams states: "Any disputes arising out of the agreement shall
be settled and determined by the American Arbitration Association
of the City of New York and their finding shall be binding and
conclusive upon the parties hereto and judgment may be entered

thereon in any court of record."[4] This language is no more broad

than the arbitration agreement in section 23.1 of the parties'

Franchise Agreement; nor does section 23.1 limit the arbitrable

claims only to those listed in section 13.2 of Booklet Eight. It

refers to Booklet Eight only to set out what procedures will be

used in the arbitration.[5]

We hold that the statutory claims are arbitrable.


## C.   <u>Fairness of the Arbitral Forum</u>

Next, the plaintiff argues that statutory claims may be

arbitrated only if "the prospective litigant may vindicate [his

or her] statutory cause of action in the arbitral forum." <u>See</u>

<u>Green Tree Fin. Corp. - Alabama v. Randolph</u>, 531 U.S. 79, 90

(2000) (internal quotations omitted). The plaintiff contends that

it will not be able to vindicate its claims effectively in the

arbitration because the proceedings are unfair. It is possible

---

[4] The plaintiff incorrectly quotes the language of the arbitration
agreement at issue in <u>Sweet Dreams</u>. <u>See</u> Pl.'s Reply. at 4 n.3. The plaintiff
quotes the American Arbitration Association's (AAA) recommended arbitration
provision, which was noted by the court for purposes of comparing it to the
parties' arbitration agreement. <u>See</u> <u>Sweet Dreams Unlimited, Inc. v. Dial-A-
Mattress Int'l, Ltd.</u>, 803 F. Supp. 1358, 1359 (N.D. Ill. 1992), reversed by 1
F.3d 639 (7th Cir. 1993). Moreover, the AAA language perfectly parallels the
language in section 23.1 of the Franchise Agreement: "Any controversy or claim
arising out of or relating to this Agreement, or the breach thereof, shall be
settled by arbitration in the City of New York, in accordance with the rules
then obtaining from the American Arbitration Association."

[5] The plaintiff argued to this court in 1998 that it would be
unconscionable to enforce the arbitration agreement because it had not
received a copy of Booklet Eight before signing the franchise agreement. To
the extent the plaintiff suggests now that it had no way of knowing its
statutory claims would be subject to arbitration on the basis of Booklet
Eight, the argument rings hollow.

-11-

that an arbitration system may be "so deeply flawed that it should be rejected on its face (a difficult standard to meet, as Green Tree makes clear), as opposed to compelling its use in arbitrations and evaluating the enforceability of particular awards." See Penn v. Ryan's Family Steak Houses, Inc., 269 F.3d 753, 758 (7th Cir. 2001). However, a fair hearing does not require all procedures available to litigants in court.

> A fundamentally fair hearing is one that "meets 'the minimal requirements of fairness'--adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator." Sunshine Mining Co. v. United Steelworkers, 823 F.2d 1289, 1295 (9th Cir. 1987) (internal citation omitted). Nevertheless, parties that have chosen to remedy their disputes through arbitration rather than litigation should not expect the same procedures they would find in the judicial arena.

Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1130 (7th Cir. 1997).

Here, the plaintiff complains that the arbitration is unfair because the panel members are not legally competent,[6] they are biased, there is no discovery, a record of the proceedings is not

---

[6]Legal expertise is not a requirement of the FAA. "Arbitrators frequently are selected for their experience in business, industry, or trade. For some, the more expertise the arbitrator has with the commercial context of the dispute, including pertinent customs and vocabulary, the more likely the award will be responsive to business reality and will achieve justice between the parties." III Ian R. Macneil, et al., Federal Arbitration Law § 27.2.3 (1999). After the oral argument in May of 2001, this court specifically observed that "there is something to be said for the idea that franchisees would have the kind of expertise in this very subject matter likely to be rbitrated that third neutrals would not have." Transcript of Proceedings, May 8, 2001, at 79.

required to be kept,[7] and there is no meaningful appeal due to the lack of a record. The plaintiff's arguments about the unfairness of the arbitral proceedings are, for the most part, repetitions of arguments the plaintiff previously raised when it attempted to avoid arbitration in 1998 or in 2001. Instead of showing how these arguments pertain specifically to unfairness in adjudicating the new claims, the plaintiff resurrects its contention that the arbitration process cannot fairly adjudicate its original claims, either. See Pl.'s Memo. at 20 ("Universal is prepared now to prove that PWDS is unable even to fairly dispose of Universal's original claims herein. Even more certainly it will not fairly adjudicate the new claims that Universal is now asserting.") We will not reconsider these arguments.[8]

The plaintiff does make two new arguments about procedural inadequacy that bear specifically upon the its new statutory claims. The first relates to the conduct of Rosel Pine, the

---

[7] The plaintiff has cited no authority requiring that a full record be kept of the proceedings. "The FAA contains no provisions respecting maintenance or records of hearings or of records being furnished to the parties. Nor has any requirement that records of hearings be maintained or furnished to the parties been established by judicial decision. The maintenance of a record, if any, is strictly a matter for the agreement of arbitrating parties." MacNeil, supra note 6, at § 32.7.1.

[8] At the conclusion of the oral arguments, we observed that "the arbitration provisions in this case are about as good as they get. I've never seen an arbitration provision that I would prefer to a court proceeding if I were interested in the full panoply of rights that one has in court. But as many courts have observed, arbitration really is an alternative to the extended and often unduly expensive judicial process. There are gaps by comparison to the court procedure, but this system that is in existence for Paul Davis franchisees seems to me to be basically fair." Transcript of Proceedings, May 8, 2001, at 79.

Arbitration Coordinator whom the plaintiff recently named as a respondent. The plaintiff states that:

> The utter impracticality of having a named respondent, Rosel Pine, administering the adjudication of claims against herself has already been angrily demonstrated incidentally; she has now filed what she styles a "special appearance" contending that she was not property (sic) served with Universal's Amended Statement of Claims. Since, as the PWDS Arbitration Coordinator, Pine is herself responsible for affecting service, Booklet Eight, § 14.2(e)(i), this means that Ms. Pine is contending that she has not been properly served by herself.

Pl.'s Memo. at 23. Section 14.2(e)(i) does not specifically mention the duties of the Arbitration Coordinator; it says that the "Franchisor" will submit the complaining party's statement of claims to the "other party." See Pl.'s Memo., Ex. E. In any event, the defendant argues that the doctrine of arbitral immunity bars claims against the Arbitration Coordinator. See Shrader v. NASD, Inc., 855 F. Supp. 122, 124 (E.D.N.C. 1994), aff'd, 54 F.3d 774 (4th Cir. 1995) (holding that claims asserted against employees responsible for administering the arbitration, including the Director of Arbitration, were barred by the doctrine of arbitral immunity in North Carolina). The plaintiff does not address this argument.

The Seventh Circuit long ago recognized the doctrine of arbitral immunity, see Tamari v. Conrad, 552 F.2d 778, 781 (7th Cir. 1977), but has not addressed in a published opinion whether the doctrine applies to the administration of the arbitration.

The Eighth Circuit has held that "arbitral immunity protects all acts within the scope of the arbitral process," including arbitration administration. <u>Olson v. National Ass'n of Securities Dealers</u>, 85 F.3d 381, 383 (8th Cir. 1996) (noting that the doctrine is an extension of judicial and quasi-judicial immunity); <u>see also</u> <u>Honn v. National Ass'n of Securities Dealers, Inc.</u>, 182 F.3d 1014, 1018 (8th Cir. 1999) (holding that the defendant was protected by arbitral immunity even if it carried out its administrative functions improperly). We agree, and decline to lift the stay of litigation on the basis that Pine failed to perform her administrative duties.

The plaintiff's second argument is that it has been given no discovery on its original claims and believes it will be deprived of any discovery on its new claims. The plaintiff argues that discovery is essential because the new claims involve allegations of fraud, and the evidence is within the exclusive control of the defendant. The plaintiff, however, has not demonstrated that it will be deprived of any discovery on its new claims. It has shown that a panel denied it discovery on its original claims, but the transcript of the hearing does not support the plaintiff's suggestion that the panel members had prejudged the issue. One of the three panelists was in favor of granting the plaintiff's discovery request, and the final decision was made after extensive debate. <u>See</u> Appendix H to Pl.'s Memo, at 98-112.

Moreover, the deciding panelist (who voted against discovery on the plaintiff's original claims) specifically left open the possibility that discovery would be appropriate in some instances. See id. at 111-12. We cannot conclude that the discovery procedures are inherently inadequate, or that the plaintiff will have no access to discovery on its new claims.[9] See Penn, 269 F.3d at 758 (stating that the district court, in deciding that arbitration procedure was biased, placed too much weight on issues such as limited discovery, and too little weight on procedural safeguards contained in unwritten rules); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991) ("Although [discovery] procedures may not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'").

The plaintiff has failed to show that the arbitration procedures are inadequate to vindicate its new statutory claims. Moreover, we are unaware of any authority (and the plaintiff cites none) for lifting a stay of litigation as to new claims on the ground that pending arbitration proceedings on the original

---

[9] Without expressing an opinion on the panel's decision to disallow any discovery on the plaintiff's original claims, we note that the failure to honor a party's request for production of pertinent evidence in the hands of an opponent may be grounds for vacation of an award under § 10(c) of the FAA, which provides for vacation if the arbitrators "refuse to hear evidence pertinent and material to the controversy." Macneil, supra note 6, at § 34.2.1.4 (pointing out, however, that courts are reluctant to vacate an award because of a failure to order production of evidence).

-16-

claims have been unfair. We would question the wisdom of such a practice, as it would essentially create the possibility of obtaining quasi-appellate review of arbitration proceedings on an interlocutory basis.

The plaintiff's motion to lift the stay of litigation is denied.

### D.    The Plaintiff's Brief

One final issue warrants comment. The plaintiff sought and was granted two extensions of time to file its brief in support of its motion. In addition, the court allowed the plaintiff to file a brief in excess of 15 pages, but specifically noted that the brief would be limited to 25 pages. The plaintiff filed a 30 page brief. The Local Rules for the Northern District of Illinois warn litigants that any brief failing to comply with the page limitations "shall be filed subject to being stricken by the court." Local Rule 7.1. Our standing orders are very clear that this court will strictly enforce page limits, and therefore, the last five pages of the plaintiff's opening brief are stricken.

Apart from ignoring the page limit, the plaintiff's brief is littered with spelling errors, grammatical sloppiness, and incorrect case citations. The substance of the brief also leaves much to be desired. The brief often cites cases that, at best, only inferentially or indirectly support the proposition the

plaintiff wishes to advance. At worst, the cited cases do not

support the proposition at all. See infra note 3. At other times,

the plaintiff vastly overstates the case law.[10]  It is hard to

understand why the plaintiff required two extensions of time to

produce the final brief. The Seventh Circuit described a

disappointing brief in United States v. Devine, and it provides

an apt description of the product before us:

> The brief was desultory in nature; in general a poorly
> written product with numerous typographical errors. It
> was obviously never edited by a caring professional. As
> a panel of judges already overburdened with cases and
> paper, we find it insulting to have to dutifully comb
> through a brief which even its author found little
> reason to give such attention. We condemn this type of
> shoddy professionalism.

787 F.2d 1086, 1089 (7th Cir. 1986).


## II.  **MOTION FOR SANCTIONS**

The defendant argues that this court should impose sanctions

on plaintiff's counsel for the following conduct: (1) arguing for

the third time that the plaintiff cannot get a fair hearing, and

in particular, arguing the question of bias; (2) arguing that its

statutory claims are not arbitrable; (3) representing to the

---

[10] For example, the plaintiff asserts: "That there will be procedural
fairness in whatever alternative arbitral process a party allegedly commits to
continues to be the controlling factor when determining whether agreements to
arbitrate will be construed to reach such claims." Pl.'s Memo. at 19. The
plaintiff cites to Circuit City Stores, Inc. v. Adams, which quotes earlier
cases stating merely that "[b]y agreeing to arbitrate a statutory claim, a
party does not forego the substantive rights afforded by the statute; it only
submits to their resolution in an arbitral rather than a judicial forum." 532
U.S. 105, 123 (2001) (compelling arbitration of an employment discrimination
action).

court that it would present authority permitting us to lift the stay of litigation as to claims already found arbitrable and then failing to present any such authority. The defendant's motion is made pursuant to 28 U.S.C. § 1927, which provides that

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. "If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. In re. TCI Ltd., 769 F.2d 441, 445 (7th Cir. 1985).

As to the first point, we noted above that most of the plaintiff's arguments about the inadequacy and unfairness of the arbitral process were simply the same arguments previously raised in 1998 and 2001. See infra I.C. Moreover, it is true that plaintiff's counsel argued once more the question of bias, which we specifically rejected in our 1998 opinion on the ground that "the FAA permits us to consider arbitrator bias only in the context of a post-award challenge." Paul Davis Sys. of N. Ill., 1998 WL 749041, at *6. The plaintiff made no showing of actual bias on the part of the panelists, but rather argued (once again) that the process is inadequate to identify any interests and biases the panelists may have. Pl.'s Memo. at 21-24. Therefore, the defendant's motion for sanctions, in the form of reasonable

fees, will be granted. However, in view of the fact that the defendant devoted little effort to any of the rehashed arguments, attorney fees will be limited appropriately. Sanctions will not be imposed on plaintiff's counsel for raising the two new arguments about unfairness that pertained specifically to its new statutory claims. See infra I.C.

As to the second point, we agree with the defendant that the plaintiff was incorrect in asserting that its statutory claims were not arbitrable. However, the plaintiff did not argue that in 1989 claims brought under RICO or the IFDA were never arbitrable; it argued that it had no notice in 1989 that such claims would be arbitrable under section 23.1 of the franchise agreement. The latter point is meritless, and the plaintiff's citation to authority was careless, at best. See infra I.A. & n.3. But the defendant's motion is not based on this deficiency, so we will not sanction the plaintiff on this basis.

As to the defendant's third point, there can be no doubt that plaintiff's counsel gave this court the impression that the motion to lift the stay was intended to apply to all of its claims, not just its new claims. When plaintiff's counsel appeared before the court on its motion to lift the stay, we specifically questioned whether the law allows us to "elbow the arbitrator out of the way and take the whole thing." Transcript of Proceedings, October 24, 2001, at 6. Plaintiff's counsel

responded: "Well, we would like to put law in front of you on that point." Id. Plaintiff's counsel did not cite any authority supporting its position, nor did it expressly retreat from this position until the last paragraph of its Reply brief. But even there, plaintiff's counsel continued to argue that "it does mot [sic] make sense to undertake two parallel proceedings, where the posited case in this Court would pertain to a more comprehensive scope of related or identical facts and overlapping issues." Pl.'s Reply at 8. Its concession that the original claims must be arbitrated was a grudging one, that did not address or even acknowledge Supreme Court precedent mandating arbitration even where the result is "piecemeal" litigation. See infra I. The plaintiff simply stated that "if the Court believes that there is some utility to proceeding with the arbitration while the more comprehensive case is proceeding in this Court then, with the claims specifically separated, that can be done." Pl.'s Reply at 8.

The clear intent of the renewed motion to lift the stay was to convince the court that because the arbitral process is unfair, none of the plaintiff's claims can be fairly adjudicated in the arbitral forum. See infra I.C. The defendant's motion for sanctions is granted, in the form of reasonable attorney fees, for time spent addressing the argument that the stay should be lifted as to the plaintiff's original claims.

The parties should follow the procedure set forth in Local Rule 54.3 in an attempt to agree upon the amount of fees to be paid by plaintiff's counsel. The effort shall be concluded by May 24, 2002, and if no agreement is reached, defendant may file a fee petition in accordance with the Rule no later than June 10, 2002.

## CONCLUSION

For the reasons explained above, the plaintiff's renewed motion to lift the stay on litigation is denied. The defendant's motion for sanctions is granted in part and denied in part. The parties are ordered to proceed with arbitration of all claims, including the plaintiff's new claims.[11]

---

[11] We will continue to stay the case rather than dismissing it. Some courts have acknowledged that dismissal is not inappropriate where the district court orders arbitration of all the claims before it. See, e.g., Fedmet Corp. v. M/V BUYALYK, 194 F.3d 674, 678 (5th Cir. 1999); Tupper v. Bally Total Fitness Holding Corp., No. 01 C 1137, 02 C 55, 2002 WL 334500, at *11-12 (E.D. Wis. Feb. 27, 2002). However, the Seventh Circuit has not favored that approach, questioning whether there is any statutory authority for dismissing a case instead of staying it when compelling arbitration. See Kroll v. Doctor's Assoc., Inc., 3 F.3d 1167, 1172 (7th Cir. 1993); see also McCaskill v. SCI Mgmt. Corp., - F.3d -, 2002 WL 507500, at *6 (7th Cir. April 4, 2002) (dissent) (noting that the Supreme Court declined to decide the issue in Green Tree, 531 U.S. at 87 n. 2). In any event, neither party has asked for a dismissal and we believe the sounder practice is to allow the stay to remain in effect rather than dismissing the action.

DATE:      April 8, 2002

ENTER:     _____
           The Honorable John F. Grady